UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Daniel Joel Martinez,

       Plaintiff,

       v.                                    Civil Action No. 2:15-cv-91-jmc

Carolyn W. Colvin, Acting Commissioner
of Social Security Administration,

       Defendant.

### OPINION AND ORDER
(Docs. 8, 9)

Plaintiff Daniel Martinez brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and remand of the decision of the Commissioner of

Social Security denying his applications for Disability Insurance Benefits (DIB) and

Supplemental Security Income (SSI).  Pending before the Court are Martinez's motion to

reverse the Commissioner's decision (Doc. 8), and the Commissioner's motion to affirm

the same (Doc. 9).  For the reasons stated below, Martinez's motion is DENIED, and the

Commissioner's motion is GRANTED.

### Background

Martinez was 27 years old on his alleged disability onset date of October 24, 2011.

He completed school through the tenth grade, and does not have a GED.  He has worked as

a brush cutter, a concrete laborer, a fence installer, and a busboy.  He is single and has no

children.  He lives in Irasburg, Vermont with his mother and younger brother, who are

both disabled.

Martinez had a traumatic childhood and experienced behavioral as well as intellectual problems in school, requiring special education classes and an IEP.  He has a long history of polysubstance abuse, including abuse of opioids and cocaine, which resulted in his arrest and imprisonment on at least one occasion for heroin possession and breaking and entering in 2011.  (AR 411–12.)  Starting in late 2011, Martinez participated in a Suboxone program to manage his heroin addiction.  (*Id.* at 412.)  Although he stopped using heroin and other illegal drugs around that time, he has continued to use marijuana on almost a daily basis, despite his medical providers' advice to avoid all recreational drugs while on Suboxone.  (*Id.*; AR 50–51, 53–54, 57, 69, 372, 376.)  In addition to his struggles with polysubstance abuse, Martinez suffers from depression, anxiety, anger management issues, and learning-related deficiencies including attention deficit hyperactivity disorder (ADHD).  He also suffers from back pain and headaches.

In June 2012, Martinez filed applications for DIB and SSI.  In his disability application, Martinez alleges that, starting on October 24, 2011, he has been unable to work due to back problems, ADHD, a heroin addiction, depression, "defiant disorder," anxiety, and migraine headaches.  (AR 290; *see also* AR 52.)  In a July 2012 Function Report, Martinez stated that he cannot stand to be around people, and he feels like killing them.  (AR 297, 304.)  He further stated that he hears voices in his head, fights with people because of his ADHD, and has trouble sleeping.  (AR 297–98.)  Martinez stated that he stays in his room most of the time, leaving the house only for doctor appointments and to shop at the supermarket once a month.  (AR 298, 300–02.)  He further stated that his

mother prepares most of his meals and does almost all the household chores.[1]  (AR

298–300.)  Finally, Martinez stated in the July 2012 Function Report that he does not

drive[2] and he is unable to handle a savings account or use a checkbook.  (AR 300; *see also*

AR 72.)  A more recent Function Report, from January 2013, indicates that Martinez is

able to do "some light housework or play with the family dog" on a daily basis (AR 311;

*see also* AR 313), and that he prepares his own "quick and easy meals" every day

(AR 313).

Martinez's application was denied initially and upon reconsideration, and he timely

requested an administrative hearing, which was conducted on April 18, 2014 by

Administrative Law Judge (ALJ) Matthew Levin.  (AR 46–95.)  Martinez, represented by

counsel, appeared and testified at the administrative hearing, as did medical expert Herburt

Golub, PhD and vocational expert (VE) James Parker.  Martinez testified that it had been

approximately three years since he had taken a drug illegally.  (AR 56–57.)  He stated,

however, that he smoked marijuana at least five times a week before bed to help him sleep,

and that he could not sleep without it.[3]  (AR 53–54, 69.)  When asked by the ALJ how he

---

[1]  As discussed in more detail below, Martinez's statement in his July 2012 Function Report that his mother prepares most of his meals and does almost all the household chores (*id.*) is inconsistent with his testimony at the April 2014 administrative hearing that his mother is disabled and receives food stamps (AR 50).  The statement is also inconsistent with Martinez's mental health counselor's notation in a January 2013 treatment note that Martinez "takes on the role of 'head of the house'" (AR 446), and with another of Martinez's medical provider's notation in a February 2014 treatment note that Martinez "is currently giving complete care to [his] invalid mother" (AR 528).

[2]  At the April 2014 administrative hearing, Martinez testified that he never obtained a driver's license because he received "a bunch of tickets [and citations for driving without a license]" when he had a learner's permit, resulting in his inability to obtain a license.  (AR 72.)

[3]  Initially, Martinez testified that he took "[f]our or five hits" of marijuana "every night."  (AR 53.)  Later in the hearing, however, he testified that he smoked marijuana only "when [he] ha[d] it," which was "five out of seven days."  (AR 69.)

afforded the marijuana, given that he did not work and was "living off [his] mom"
(AR 50), Martinez testified that his friends and brother gave it to him (AR 51, 69–70).
Martinez further testified at the administrative hearing that he had been hearing voices in
his head for the prior 12–18 months, and that he stayed in his room all the time and had not
been out socially in the prior six months.  (AR 57–59.)  He stated that he could not
concentrate due to hearing voices and feeling anxious and irritable (AR 64); he had trouble
getting along with others and got into physical fights with others (AR 63–64); he was
limited in his ability to stand, walk, bend, lift, and squat due to back pain (AR 65); he
napped a lot due to anxiety (AR 65–66); and he had mood swings "all the time," which
involved getting "really mad" and yelling and screaming at people (AR 67).  Martinez
testified that he attended counseling sessions with mental health counselor Gretchen
Lewis, LCMHC; obtained prescriptions for most of his medications—including Zyprexa
and Trazodone—from David Mooney, MD; and obtained Suboxone from Bruce Latham,
DO.  (AR 57, 61–62.)

On May 2, 2014, the ALJ issued a decision finding that Martinez would not be
disabled if he stopped the substance use, and thus he was not disabled under the Social
Security Act at any time from his alleged onset date through the date of the decision.
(AR 12–29.)  Thereafter, the Appeals Council denied Martinez's request for review,
rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–3.)  Having
exhausted his administrative remedies, Martinez filed the Complaint in this action on
April 27, 2015.  (Doc. 3.)

**ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the

national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

When, as here, there is medical evidence of a claimant's drug or alcohol abuse (DAA), the "disability" inquiry does not end with the five-step analysis. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (citing 20 C.F.R. § 416.935(a)). In 1996, Congress enacted the Contract with America Advancement Act (CAAA), which amended the Social Security Act by providing that: "An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *see also* 20 C.F.R. § 416.935(b)(1, 2); 42 U.S.C. § 1382c (a)(3)(J). The "key factor" is "whether [the Social Security Administration] would still find [the claimant] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1); *see also* 20 C.F.R. § 416.935(b)(2)(i) ("If [the Commissioner] determine[s] that [the claimant's] remaining limitations would not be disabling, [she] will find that [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability."); *Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 272 (W.D.N.Y. 2005).

The CAAA does not specify who bears the burden of proving that the claimant's DAA is not material to the determination that he is disabled, but the Second Circuit has sided with almost all the other circuits in holding that the claimant bears that burden. *Cage*, 692 F.3d at 123 (listing cases). The court explained: "[B]ecause the CAAA

amended the definition of 'disabled' to exclude conditions materially caused by DAA,

proving DAA immateriality is best understood as part of a claimant's general burden of

proving that she is disabled." *Id.* at 124. Moreover, the Second Circuit found that

"[f]airness and practicality . . . counsel in favor of placing this burden on [claimants]," who

are "better positioned than the [Social Security Administration] to offer proof as to the

relevance of any DAA to their disability determinations because facts relevant to those

determinations ordinarily would be in their possession." *Id.* (citing *Bowen v. Yuckert*,

482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a

better position to provide information about his own medical condition, to do so.")).

Employing this sequential analysis, ALJ Levin first determined that Martinez had

not engaged in substantial gainful activity since his alleged disability onset date of

October 24, 2011. (AR 15.) At step two, the ALJ found that Martinez had the following

severe impairments: degenerative disc disease of the lumbar spine, depression, anxiety,

and marijuana addiction. (*Id.*) Conversely, the ALJ found that Martinez's headaches and

ADHD were non-severe. (AR 15–16.) At step three, the ALJ found that Martinez's

impairments, including the substance use disorders, met sections 12.04 (affective

disorders) and 12.09 (substance abuse disorders) of the Listings. (AR 16.) The ALJ

further found that, if Martinez stopped the substance use, he would still have a severe

impairment or combination of impairments (AR 18); however, these impairments would

not meet or medically equal a listed impairment (AR 19).

Next, the ALJ determined that, if Martinez stopped the substance use, he would

have the RFC to perform "light work," as defined in 20 C.F.R. §§ 404.1567(b),

416.967(b), except as follows:

> [Martinez] must avoid all ladders, ropes, scaffolds, and hazards; he could
> occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl;
> he would be limited to simple unskilled work; he should avoid social
> interaction with the general public, but can sustain brief and superficial
> social interaction with co-workers and supervisors; and he can maintain
> attention and concentration for two-hour increments throughout an eight-
> hour day and forty-hour week.

(AR 20.)  Given this RFC, the ALJ found that, if Martinez stopped the substance use, he

would be unable to perform his past relevant work as a concrete laborer, a fence installer,

and a busboy.  (AR 27.)  Finally, based on testimony from the VE, the ALJ determined

that, if Martinez stopped the substance use, he could perform other jobs existing in

significant numbers in the national economy, including the following representative

occupations: office cleaner, price marker, and laundry sorter/folder.  (AR 28.)  The ALJ

concluded as follows:

> [Martinez's] substance use disorder is a contributing factor material to the
> determination of disability because [Martinez] would not be disabled if he
> stopped the substance use.  Because the substance use disorder is a
> contributing factor material to the determination of disability, [Martinez] has
> not been disabled within the meaning of the Social Security Act at any time
> from the alleged onset date through the date of this decision.

(AR 29 (citations omitted).)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A

person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied."  *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Martinez argues that the ALJ erred in his analysis of the opinions of testifying medical expert Dr. Golub and Martinez's treating sources, which resulted in other errors,

including in the ALJ's assessment of the severity of Martinez's impairments, the ALJ's finding that Martinez's impairments did not meet or medically equal a listed impairment, the ALJ's RFC determination, and the ALJ's conclusion that Martinez's substance use disorder was a contributing factor material to the determination of Martinez's disability. (*See* Doc. 8-1 at 3–12.)  Martinez further argues that substantial evidence does not support the ALJ's assessment of Martinez's credibility.  (*Id.* at 12–14.)  In response, the Commissioner asserts that the ALJ properly relied on Dr. Golub's testimony in determining that Martinez's substance use disorder was a contributing factor material to the determination of Martinez's disability.  (*See* Doc. 9 at 5–10.)

**I.     The ALJ's analysis of the medical opinions was proper.**

Martinez's primary argument is that the ALJ should not have relied on the testimony of medical expert Dr. Golub at the administrative hearing.  Dr. Golub, a forensic psychologist who reviewed the record but did not examine or treat Martinez, testified that, although the effects of marijuana vary according to the individual, they are both short and long term, and the long-term effects "would [last] anywhere from 12 to 24 hours to two weeks . . . [;] [and] with most people it would have effects throughout the next day, maybe for a couple of weeks even, and even possibly for a month."  (AR 77, 78.)  "[I]n most cases," explained Dr. Golub, a person who used marijuana as often as Martinez, "would be having impact [from it] through the next day at the very least."  (AR 78.)  Based on his knowledge of psychological research; his experience in treating and evaluating people who use marijuana; and the medical reports and treatment notes of Martinez's treating medical provider Bruce Latham, DO, Martinez's treating mental health counselor Gretchen Lewis,

LCMHC, and Martinez's examining consultant Theodore Williams, PhD (AR 76–78, 85);

Dr. Golub opined that Martinez's marijuana use had a "very significant impact" on his

ability to function, and that the interaction of marijuana with Martinez's prescribed

medications, particularly his antidepressants, was "concerning" (AR 78; *see* AR 77).

Dr. Golub further opined that Martinez's ongoing marijuana use was material to his mood

and motivation (*id.*); and that if Martinez stopped using marijuana, his lethargy,

depression, memory loss, and social isolation would lessen (AR 80), and his depression

"would not be anywhere near a listing level" (AR 84).

      The ALJ afforded "significant weight" to these opinions of Dr. Golub, finding them

to be "reasonable, objective, and based upon a review of the entire medical evidence of

record and [Martinez's] testimony at the hearing."  (AR 18; *see also* AR 16–17, 24.)  In

making this finding, the ALJ relied in part on the treatment notes of treating physician

Dr. Latham,[4] stating:

> Dr. Latham, who prescribes [Martinez's] Suboxone, has consistently told
> [Martinez] not to use marijuana and that he should avoid all recreational
> drugs . . . while on Suboxone; however, [Martinez] continues to do so
> against doctors' orders.  Obviously, Dr. Latham realizes that continued abuse
> of illegal drugs is not helping [Martinez's] recovery.

(AR 18 (citing AR 421–27, 512, 557).)  The record supports this assessment, indicating

that Dr. Latham "[s]tressed [the] importance of [Martinez] avoiding recreational drugs

while on [S]uboxone" at each of Martinez's appointments.  (*See* AR 422–27, 476–90,

512–28, 557.)

---

    [4]  As a doctor of osteopathic medicine (*see, e.g.*, AR 377), Dr. Latham is considered an acceptable
medical source under the regulations.  *See* 20 C.F.R. § 404.1513(a)(1).

Martinez asserts that the ALJ should have afforded less weight to the opinions of Dr. Golub and more to those of Martinez's treating psychiatrist, David Mooney, MD. After treating Martinez on four occasions over a 10-month period, Dr. Mooney opined in a March 2014 letter that Martinez "has readily admitted to frequent marijuana use at night to help him relax and sleep," and that use "has not had any significant impact on his functioning during the day."  (AR 248, 561; *see* AR 502.)  The ALJ afforded "limited weight" to this opinion, "in light of the contrary and credible testimony of Dr. Golub, who testified that Dr. Mooney's findings contradicted the vast weight of all psychological research that has found marijuana's effects continue to manifest not only for hours, but [for] days, weeks[,] and even up to a month after use."[5]  (AR 18; *see* AR 25, 77–78.)

In a more detailed February 2014 Questionnaire, Dr. Mooney diagnosed Martinez with major depressive disorder with psychotic features, opioid dependence in full sustained remission, and social phobia.  (AR 502.)  Dr. Mooney opined that Martinez had marked restrictions in activities of daily living and concentration, persistence, or pace; and extreme difficulties in maintaining social functioning.  (AR 503.)  As support for these opinions, Dr. Mooney wrote: "See records."  (AR 503–04.)  In a February 2014 Assessment of Ability to Do Work-Related Activities (Mental), Dr. Mooney similarly opined that

---

[5]  On this point, Dr. Golub testified as follows:

I'm very concerned that Dr. Mooney is . . . so adamant that the marijuana cannot be having [an] affect beyond the assistance for sleeping at night.  Any research that's been done on that would not state that, it's possible but . . ., in most cases it would be having impact through the next day at the very least.  And I . . . see the ongoing marijuana usage as being material to [Martinez's] . . . mood and his motivation and isolation issues.

(AR 78.)

Martinez was either markedly or extremely limited in his ability to do all work-related activities, including among others, responding appropriately to coworkers, dealing with the public, functioning independently, and relating predictably in social situations.  (AR 505–07.)

The ALJ afforded "limited weight" (AR 25, 26) to these opinions of Dr. Mooney for several reasons: (1) Dr. Mooney saw Martinez on only four occasions, and thus "lacked a longitudinal treatment history with [Martinez] or very detailed knowledge of his impairments over time" (AR 25–26 (citing AR 502)); (2) Dr. Mooney's opinions provide "very limited objective narrative assessment or support for his profound limitations as described, with him merely checking items on a form or writing 'see records,' which fails to provide support for his listing-level impairments as described" (AR 26); (3) Dr. Mooney provided no objective support in his opinions and no such support is contained in his treatment records (*id.* (citing AR 459–66)); and (4) Dr. Mooney's findings are inconsistent with "other evidence of record," including Martinez's ability to work nearly full time for six weeks, his ability to shop on occasion, his ability to meet with friends and obtain marijuana from them, and his testimony that he was "head of [his] household" (AR 26).

These are all proper factors for the ALJ to consider in assessing the value of a treating physician's opinions.  *See* 20 C.F.R. § 404.1527(c)(2)(i) ("the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion"); *id.* § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The

better an explanation a source provides for an opinion, the more weight we will give that

opinion."); *id.* § 404.1527(c)(4) ("the more consistent an opinion is with the record as a

whole, the more weight we will give to that opinion").  Moreover, the ALJ's findings with

respect to Dr. Mooney's opinions are supported by substantial evidence.  Specifically, the

opinions themselves are unsupported, with Dr. Mooney merely referencing his "records"

instead of providing explanation or support therein.  (AR 503–04.)  Moreover, neither

Dr. Mooney's own records nor those of Martinez's other treating and consulting providers

support the level of impairment contained in Dr. Mooney's opinions.  For example,

although Dr. Mooney opined in February 2014 that Martinez had "marked" deficiencies in

concentration, persistence, or pace (AR 503), and "extreme" limitations in understanding,

remembering, and carrying out even simple job instructions (AR 506); Dr. Mooney

indicated in a May 2013 treatment note that Martinez had "grossly intact" cognition "with

perhaps the exception of some mild memory deficits" (AR 459).  And although

Dr. Mooney opined that Martinez had "extreme" difficulties in maintaining social

functioning and relating predictably in social situations (AR 503, 506), and was

"extreme[ly]" limited in his ability to function independently (AR 505); Dr. Williams

recorded that Martinez told him he was able to care for himself on his own (AR 414) and

had only "mild problem[s]" getting along with others (AR 415).

    Furthermore, the ALJ correctly found that Dr. Mooney's opinions are inconsistent

with "other evidence of record," including: Martinez's ability to work full time for

approximately six weeks[6] (*see* AR 51–52 (might have been able to keep doing brush-cutting job had job not ended), 444–45 (working at brush-cutting job)); his ability to do community service work (*see* AR 487 ("only has [six] days of community service left"), 489 ("really staying on task with trying to get things accomplished like his community service"), 494 ("has been working hard at completing his community service")); his ability to go food shopping once a month (*see* AR 70, 300, 314); and his ability to maintain friendships with people who consistently supplied him with free marijuana (*see* AR 51, 69–70, 75).   Additionally, despite Dr. Mooney's opinion that Martinez was "[unable] to function outside a highly supportive living arrangement" (AR 504), the record indicates that Martinez took on a role as head of his household.   (*See* AR 446 ("takes on the role of 'head of the house'"), 490 ("takes his role of 'head of household' seriously"), 528 ("giving complete care to invalid mother")).

Although Dr. Mooney was Martinez's treating psychiatrist during part of the relevant period and Dr. Golub was a testifying psychologist who never examined or treated Martinez, the ALJ was entitled to afford more weight to the opinions of Dr. Golub than to those of Dr. Mooney.   Notwithstanding the treating physician rule, the regulations and caselaw permit the opinions of medical consultants to override those of treating physicians, when the former are more consistent with the record than the latter.   *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he regulations . . . permit the opinions of

---

[6] An October 2012 note written by counselor Lewis "[o]n behalf of" Martinez states: "I agree that there is some work that I can do."  (AR 420.)  But Martinez states that his reputation for not being "able to hold a job [for] more than a couple of months" and the fact that he was fired from multiple jobs, has left him unable to secure employment "in a small town like the one [he] live[s] in, [especially] without a car," because "no one wants to take a chance on [him] anymore."  (*Id.*)

nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record.") (citing *Schisler v. Sullivan*, 3 F.3d 563, 567–68 (2d Cir. 1993)); *see also* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). Here, the opinions of medical expert Dr. Golub are more consistent with the record than those of treating physician Dr. Mooney, for the reasons stated above and by the ALJ in his decision. (*See* AR 18, 25–26.)

Thus, the Court finds no error in the ALJ's allocation of significant weight to the opinions of Dr. Golub and limited weight to those of Dr. Mooney.

## II.   Substantial evidence supports the ALJ's assessment of Martinez's credibility.

The Court also finds no error in the ALJ's assessment of Martinez's credibility. It is the function of the Commissioner, not the court, to "resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *see Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010). If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints. *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984); *see Calabrese v. Astrue*, 358 F. App'x 274, 277 (2d Cir. 2009). "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

Here, the ALJ found that Martinez's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not credible" (AR 21), and gave several specific reasons in support of that finding.  First, the ALJ accurately stated that, despite complaints of significant symptoms and functional limitations from his back condition, Martinez has a "very limited treatment history for his alleged back pain" (*id.*), and the record indicates that he has "fairly intact physical functioning" including performing all his daily activities and caring for his mother (AR 22).  Second, the ALJ stated that Martinez's "extensive substance abuse, and his unclear testimony concerning such abuse, calls into question his credibility."  (AR 23.)  The ALJ reasonably explained that, given Martinez's testimony that neither he, his mother, nor his brother had any income, and that he did not use his brother's "disability money" to pay for marijuana, "[i]t is simply not credible that his friends have been supplying him with free marijuana[—on an almost daily basis—]for years, particularly in light of the fact that he told the consultative examiner of record that he had no friends."  (*Id.* (citing AR 414); *see* AR 50–51, 69–70.)  Third, the ALJ accurately stated that, despite Martinez's claims that he could not work, he told counselor Lewis that when he had "'no choice'" but to work, he was able to do a seasonable job on a nearly full-time basis until the employment season ended.  (AR 23 (quoting AR 444–48); *see* AR 325, 444.)  The ALJ further noted that, although treatment records indicated Martinez had some difficulty with this work, he testified at the administrative hearing that he "[m]aybe" could have continued to do it had the job not ended.  (AR 52; *see* AR 23.)  Finally, the ALJ correctly stated that the record demonstrates that Martinez was able to perform a number of daily tasks, including

17

managing his personal care, feeding himself, doing his own laundry, food shopping, doing community service, and caring for his invalid mother, despite his allegedly disabling impairments.  (AR 24 (citing AR 414, 446, 486, 495, 528).)

As discussed above, the record does in fact demonstrate that Martinez was able to engage in activities which required a higher level of functionality than Martinez claimed to have.  It was proper for the ALJ to consider Martinez's ability to engage in these activities in determining the credibility of Martinez's disability claims.  *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) ("[T]he fact that [the claimant] could perform some work cuts against his claim that he was totally disabled."); *see also Calabrese*, 358 F. App'x at 278 (citing 20 C.F.R. § 404.1529(c)(3)) ("in assessing the credibility of a claimant's statements, an ALJ must consider . . . the claimant's daily activities").  Moreover, the ALJ was not obliged to accept either Martinez's or Dr. Mooney's characterization of the record without question, especially given Dr. Golub's testimony regarding the effect Martinez's marijuana use had on his ability to function.  *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.") (citations omitted).

Given that the ALJ's credibility assessment is supported by substantial evidence, and "an ALJ's credibility determination is generally entitled to deference on appeal,"

*Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013), the Court does not disturb the ALJ's assessment of Martinez's credibility.

## Conclusion

For these reasons, the Court DENIES Martinez's motion (Doc. 8), GRANTS the Commissioner's motion (Doc. 9), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 4th day of May, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

19